# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### DOCKET NO. 5:22-cv-00053-FDW

| | |
|---|---|
| **TAMMY KLUGH,** )<br>)<br>**Claimant,** )<br>)<br>**vs.** )<br>)<br>**KILOLO KIJAKAZI,** )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** )<br>)  | **ORDER** |

      **THIS MATTER** is before the Court on Claimant Tammy Klugh's ("Claimant") Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 8, 9), filed September 12, 2022; Defendant Acting Commissioner of Social Security's ("Commissioner") Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 10, 11), filed November 9, 2022; and Claimant's Response to Defendant's Motion for Summary Judgment, (Doc. No. 12), filed November 23, 2022. Claimant, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB").

      The motions are fully briefed and are now ripe for review. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Claimant's Motion for Summary Judgment is **GRANTED**; the Commissioner's Motion for Summary Judgment is **DENIED**; and the Commissioner's decision is **REMANDED**.

## I. BACKGROUND

      Claimant filed an application for DIB on December 16, 2017. (Tr. 298-304). Claimant alleges disability beginning October 27, 2014. (Tr. 174–88). Following an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on December 11, 2019. (Tr.

128–44). On August 26, 2020, the agency's Appeals Council remanded the case to the ALJ, directing him to obtain additional evidence concerning Claimant's mental impairments, if any, in order to complete the record. (Tr. 145–152). The Appeals Council also directed the ALJ to further evaluate Claimant's mental health impairments, to give further consideration to Claimant's Residual Functioning Capacity ("RFC"), and to obtain evidence from a Vocational Expert ("VE") to clarify the effect of the limitations on Claimant's occupational base. (Tr. 145–152). On remand, following a telephone hearing on September 14, 2021, the ALJ issued another unfavorable decision on October 1, 2021. (Tr. 22–40).

During the five-step sequential evaluation process for analyzing disability under the Social Security Act, at step one the ALJ found Claimant had not engaged in substantial gainful activity since October 27, 2014, and Claimant met the insured status requirements through December 31, 2019. (Tr. 27). At step two, the ALJ concluded that Claimant had the following severe impairments: "multiple sclerosis [("MS")]; carpal tunnel syndrome; degenerative disc disease; shoulder osteoarthritis; obesity; and asthma." (Tr. 27). Then, at step three, the ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart B, App. 1. (Tr. 29). Before proceeding to step four, the ALJ found Claimant had the RFC to perform work at sedentary levels as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), but with the following limitations:

> [O]ccasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; no crawling; frequently push, pull, reach, handle, and finger with the bilateral upper extremities; avoid more than occasional temperature extremes, humidity, vibrations, and environmental factors, such as smoke, fumes, dust, and odors; no more than occasional noise in excess of a moderate noise level; and no more than occasional exposure to hazards, such as unprotected heights and open machinery.

(Tr. 30).

Addressing step four, the ALJ found Claimant capable of performing her past relevant work as a Vice President, Human Resources, because such work does not require the performance of activities precluded by the claimant's RFC. (Tr. 33). Here, the ALJ asked the VE whether an individual with Claimant's age, education, work experience, and RFC, would be able to perform Claimant's past relevant work. (Tr. 66–67). The VE testified that such an individual could perform the position of Vice President, Human Resources, as it is generally performed. (Tr. 33; Tr. 67). As a result, the ALJ concluded Claimant was not disabled as defined under the Social Security Act, from October 27, 2014, the date the application was filed, through December 31, 2019, the date last insured. (Tr. 22–40).

The agency's Appeals Council denied Claimant's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–8). Claimant has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richard v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Rather, when examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g);

Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456. Thus, the court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe

4

impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's [RFC] before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

5

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d at 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

On appeal, Claimant asserts two overarching challenges to the ALJ's decision. First, Claimant argues Acting Commissioner Berryhill lacked statutory authority to ratify the appointment of ALJ's in 2017.[1] Second, Claimant argues the ALJ's evaluation was legally flawed in five aspects: (1) the treating opinion of Dr. Renda Dawud; (2) Claimant's mental limitations; (3) Claimant's statements about her symptoms and the evidence of record; (4) the ALJ did not comply with the requirements of the Appeals Council's remand order; and (5) the combined effect

---

[1] During the discussion of the FVRA, Claimant also challenges, pursuant to the Appointment Clause, Acting Commissioner Berryhill's ratification of the appointment of the ALJ in this case. However, in light of the Fourth Circuit's recent ruling in Brooks v. Kijakazi, and for the reasons cited therein, this argument fails. Brooks v. Kijakazi, No. 21-2048, at *12–13 (4th Cir. Feb. 22, 2023) (finding that the ALJ's second denial of benefits in 2019 was lawful since she was "properly appointed to her position by virtue of the Commissioner's 2018 ratification," but remanding because the ALJ's initial denial in 2018 was flawed and Lucia v. SEC, 138 S.Ct. 2044 (2018), requires a new hearing to cure the initial constitutional error). Here, the appointment of the ALJ was properly ratified when he denied Claimant's disability benefits claim in 2021. Brooks, No. 21-2048, at *12–13; see also Taylor v. Kijakazi, No. 1:21CV648, 2022 WL 4668273, at *12 (M.D.N.C. Aug. 2, 2022).

of Claimant's impairments on her RFC. The Court denies Claimant's ratification argument for reasons discussed below. However, the Court agrees with Claimant's assignment of error concerning the combined effect of her impairments on her RFC, and holds that because the ALJ applied the incorrect legal standard, remand is warranted.

### A. Constitutionality of Ms. Berryhill's Appointment and Ratification

Claimant argues that then-Acting Commissioner Berryhill was not properly acting under the FVRA when she ratified the appointment of the ALJ in this case because her tenure had expired, such that the ratification of the ALJ was ineffective. Claimant urges the Court to rely on Brian T.D. v. Kijakazi, 580 F.Supp.3d 615 (D. Minn. Jan. 20, 2022), *rev'd sub nom.* Dahle v. Kijakazi, No. 22-1601, 2023 WL 2379383 (8th Cir. Mar. 7, 2023), in which a district court concluded Ms. Berryhill could not serve as Acting Commissioner during the pendency of Mr. Saul's nomination because the initial 210-day acting service period lapsed before the submission of his nomination in April 2018. Thus, the district court found Ms. Berryhill could not lawfully ratify and approve the appointments of SSA ALJs as her own.

However, the Court disagrees with the Minnesota district court's interpretation of the FVRA, instead finding persuasive the interpretation and substantial analysis of other judges from this Court and Circuit.[2] Furthermore, since the filing of Claimant's motion, the Eighth Circuit reversed the Minnesota district court's ruling and held "[t]he test and legislative history show the

---

[2] See, e.g., Williams v. Kijakazi, No. 1:21-CV-141, 2022 WL 2163008, at *2–4 (W.D.N.C. June 15, 2022); Taylor v. Kijakazi, No. 1:21-CV-648, 2022 WL 4668273, at *9, (M.D.N.C. Aug. 2, 2022); Black v. Kijakazi, No. 1:21-CV-322, 2022 WL 2977304, at *3 (W.D.N.C. July 27, 2022); Edwards v. Comm'r of Social Sec., No. 1:21-CV-00134, 2022 WL 3352298, at *4 (W.D.N.C.); Call v. Comm'r of Social Sec., No. 5:21-CV-00145, 2023 WL 1093670, at *5 (W.D.N.C. Jan. 10, 2023); Stanley v. Kijakazi, No. 1:22-CV-43, 2023 WL 318581, at *12 (M.D.N.C. Jan. 29, 2023); Allison v. Kijakazi, No. 1:21-CV-890, 2023 WL 143201, at *12 (M.D.N.C. Jan. 10, 2023); Huntsinger v. Comm'r of Social Sec., No. 1:21-CV-00267, 2023 WL 1456187, at *4 (W.D.N.C. Jan. 4, 2023); Brooks v. Kijakazi, No. 1:21-CV-609, 2022 WL 2834345, at *16 (M.D.N.C. July 20, 2022); Donta J. v. Saul, No. 2:20-CV-131, 2021 WL 3705145, at *7 (E.D. Va. Apr. 2, 2021), adopted by 2021 WL 2711467 (E.D. Va. July 1, 2021); Taylor v. Saul, No. 1:16-CV-00044, 2019 WL 1055098, at *4 (W.D. Va. Aug. 15, 2019).

7

intent of the legislative branch was to allow an individual to serve noncontinuously under subsections 1 and 2 [of § 3346(a)]." <u>Dahle</u>, 2023 WL 2379383, at *3. The Court adopts and incorporates the reasoning of a fellow judge in this District addressing the same constitutional challenge to Ms. Berryhill's appointment as Acting Commissioner and her ratification of the SSA ALJs as her own. <u>Williams v. Kijakazi</u>, No. 1:21-CV-141, 2022 WL 2163008, at *2–4 (W.D.N.C. June 15, 2022) (unpublished) (finding the plain text of the FVRA, the view of the Executive Branch, and the view of the Legislative Branch all agree "§ 3346(a)(2) permits an acting official serving under the FVRA to serve during the pendency of a first or second nomination even when that nomination was submitted after the initial 210-day period for acting service has expired").

The Court is persuaded that Claimant's argument is without merit. Therefore, the final decision of the ALJ is not constitutionally defective.

### B. The ALJ's Evaluation

#### i. *Dr. Dawud's Treating Opinion*

Claimant first argues the ALJ failed to properly evaluate the treating opinion of Dr. Renda Dawud when assessing Claimant's RFC. The Court disagrees.

The Fourth Circuit has held a treating physician's opinion need not be afforded controlling weight. <u>Hunter</u>, 993 F.2d at 35. Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." C.F.R. §§ 404.1527(d)(2) (2002); <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

significantly less weight." Mastro, 270 F.3d at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

According to Claimant, Dr. Dawud concluded she could not perform sedentary work and that Claimant satisfied a Listing 11.00 for MS because she had disorganization of motor function in two extremities, limiting her ability to stand from a seated position or balance while standing or walking. Claimant also argues Dr. Dawud's opinion about the onset date of Claimant's impairments is consistent with the record and Dr. Dawud's findings support Claimant's reports about her medication side effects. However, the ALJ disagreed, finding the objective medical records did not demonstrate the requirements of a Listing 11.00 for MS. (Tr. 29–30). Regarding Dr. Dawud's opinion, the ALJ stated:

> Renda Dawud, M.D., opined in April 2018, that the claimant is unable to perform even sedentary work with mild pain and moderate fatigue (11F). This is not persuasive, as it is inconsistent with, and unsupported by, the claimant's progress reports and examination findings, which indicate that she is less limited. For example, on examination, the claimant generally presents with the following mostly normal findings: intact cranial nerves, no swelling, normal sensation, normal muscle strength, normal gait, no atrophy, no ecchymosis, no weakness, no scapula winging, no crepitus, normal peripheral pulses, normal rise from chair, and normal range of motion (1F/2-3; 3F/7-9; 5F/5; 7F/9, 10, 12, 18; 8F/16, 30, 44; 9F/15; 12F/5; 13F/11; 14F/3; 17F/55; 18F/15; 23F/105).

(Tr. 33). Claimant argues the ALJ failed to provide adequate reasoning to support this conclusion.

The ALJ found that no treating or examining physician documented findings equivalent in severity to the criteria of a listed impairment. (Tr. 29). Further, the ALJ found Dr. Dawud's opinion unpersuasive, as it is unsupported by Claimant's "progress reports, examination findings, and objective evidence," which indicate she is less limited. (Tr. 30; Tr. 33). For example, on examination by State agency medical consultant Dr. Valerie Andrews, Claimant demonstrated normal muscle strength, normal gait, no weakness, and normal range of motion. (Tr. 32). Dr. Andrews also opined Claimant is limited to light work, with additional pushing/pulling with the

9

left upper extremity, postural, manipulative, and environmental limitations. (Tr. 32). However, the ALJ still noted Claimant's overall records indicate she is further reduced to a sedentary level of work. (Tr. 33). Therefore, since Dr. Dawud's findings are "inconsistent with other substantial evidence," including other clinical evidence, the ALJ properly accorded Dr. Dawud's findings "significantly less weight" in determining whether Claimant met a Listing 11.00 and determining her RFC. Mastro, 270 F.3d at 178. Additionally, the ALJ's ultimate conclusion—that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment—is supported by substantial evidence and adequate explanation. As such, Claimant's first argument against the ALJ's evaluation is without merit.

*ii.   Effect of Mental Limitations*

Second, Claimant contends the ALJ failed to properly evaluate Claimant's mental limitations caused by her anxiety, somatic symptom disorder, neurocognitive disorder, chronic pain, fatigue, and medication side effects, in evaluating her RFC. Again, the Court disagrees.

When performing the RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34,478). In other words, the ALJ must identify evidence supporting his conclusion and "build an accurate and logical bridge from [that] evidence to his conclusion." Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). Specifically, when considering a claimant's credibility, "an ALJ may not consider the type of activities a claimant can perform without considering the extent to which she can perform them." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (citing Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 263 (4th Cir. 2017)).

Claimant advances two arguments alleging the ALJ erred in evaluating her mental limitations: (1) the ALJ's evaluation ignores reports from Claimant and her husband about the extent she can perform tasks like bathing, dressing, cooking, and doing household chores, and (2) the ALJ improperly substituted his lay opinion for the consulting opinion of Dr. Sara Schneidmiller regarding Claimant's mental limitations.[3] The Court finds both arguments are without merit.

Claimant and her husband alleged that she requires regular assistance from her husband in performing tasks like bathing, dressing, cooking, and doing household chores. Claimant argues this precludes her from satisfactorily performing the basic mental demands of regular, competitive work. However, these self-reports discuss the assistance Claimant needs from her husband to perform tasks due to Claimant's physical limitations, rather than her mental limitations. The ALJ found Claimant's mental impairments and associated symptoms did not cause more than mild limitation in her ability to perform basic mental work activities, and concluded the impairments and symptoms are non-severe. (Tr. 28). The ALJ stated:

> The claimant's medically determinable mental impairments of somatic symptom disorder and mild neurocognitive disorder do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere (24F/4). On examination, the claimant generally presents with the following mostly normal findings: alert, oriented to time, place, and person, normal attention span, fluent speech, normal memory, normal mood, normal judgment, normal affect, cooperative, and adequate fund of knowledge (5F/5; 7F/10, 21; 8F/17, 44; 9F/15; 12F/5; 13F/10; 14F/3; 15F/24, 29; 16F/6; 18F/15; 22F/9; 24F). The claimant has received no more than conservative treatment for her mental impairments.

(Tr. 28).

---

[3] Claimant also alleges the ALJ failed to meet the requirements of the Appeals Council's remand order by undercutting Dr. Schneidmiller's opinion. The Court addresses this argument below.

Claimant also reported she is able to live with her husband, complete personal needs and grooming without special reminders, prepare simple meals, iron clothing, fold clothing, drive a car, grocery shop in stores, and pay bills, among many other activities. (Tr. 28–29). Based on medical examinations and Claimant's own testimony, the ALJ concluded Claimant's medically determinable mental impairment caused no more than "mild" limitation in the four broad functional areas, known as "paragraph B" criteria, and the evidence does not otherwise indicate more than a minimal limitation in Claimant's ability to do basic work activities. (Tr. 28–29).

To support this conclusion, the ALJ noted specific medical facts found in Claimant's examination findings that indicate she has no more than mild mental limitations and mild mental impairments. (Tr. 28–29); see Mascio, 780 F.3d at 636. The ALJ also cited nonmedical evidence, including Claimant's self-reports. (Tr. 28–29); see Mascio, 780 F.3d at 636. In addition to the examination findings and self-reports, the ALJ referenced Claimant's conservative treatment history to "build an accurate and logical bridge" of substantial evidence to support his conclusion about Claimant's mild mental limitations and impairments. (Tr. 28–29); see Monroe, 826 F.3d at 189. Therefore, the Court rejects Claimant's argument that the ALJ failed to properly evaluate her mental limitations.

Next, Claimant argues the ALJ improperly substituted his lay opinion for the consulting opinion of Dr. Sara Schneidmiller regarding Claimant's mental limitations. Claimant cites Arakas v. Comm'r Soc. Sec. Admin, 983 F.3d 83 (4th Cir. 2020), which held that "[a]n ALJ may not substitute his own lay opinion for a medical expert's when evaluating the significance of clinical findings." Arakas, 983 F.3d at 108 (citing Wilson v. Heckler, 743 F.2d 218, 221 (4th Cir. 1984)). "Of particular relevance [in Arakas], ALJs may not draw their own conclusions from medical imaging, as they lack the expertise to interpret it." Arakas, 983 F.3d at 108-09 (citing Hoyt v.

Colvin, 553 F. App'x 625, 627 (7th Cir. 2014)). "Because the ALJ lacked the medical expertise to interpret a cervical MRI, he erred in discounting [the treating physician]'s opinion based on his own lay views of what an MRI could demonstrate." Arakas, 983 F.3d at 109.

Unlike the ALJ in Arakas, the ALJ here did not substitute his lay opinion about medical imaging for a treating physician's opinion about medical imaging. Rather, the ALJ evaluated the significance of a consulting physician's opinion by comparing Claimant's reported symptoms and the consulting physician's conclusions with the objective evidence on record. In March 2021, Dr. Schneidmiller opined Claimant had no more than mild B criteria limitations, some symptoms of short-term memory impairment, and some difficulty with concentration. (Tr. 33). The ALJ found Dr. Schneidmiller's opinion regarding Claimant's mild B criteria limitations persuasive, since the assessment is consistent with Claimant's examination findings and her treatment history. (Tr. 33). However, the ALJ found the symptoms of short-term memory impairment and difficulty with concentration inconsistent with Claimant's good performance on her examination. (Tr. 33). As a result, the ALJ found Dr. Schneidmiller's conclusion as to Claimant's memory and concentration impairments to be based on Claimant's subjective reporting, inconsistent with her examinations, and thus unpersuasive. (Tr. 33). Since Dr. Schneidmiller's opinion about Claimant's reported symptoms of short-term memory impairment and difficulty with concentration are inconsistent with the objective evidence, the ALJ made a proper conclusion based on substantial evidence that she suffered from no more than mild mental limitations and mild mental impairments. Therefore, because the ALJ did not "substitute his own lay opinion" for a medical expert's when assessing Claimant's mental limitations, the Court rejects Claimant's argument. Arakas, 983 F.3d at 108.

*iii.   Subjective Statements*

Third, Claimant contends the ALJ failed to properly evaluate her statements about her symptoms, alleging the ALJ failed to consider the extent Claimant can perform daily activities. Claimant also argues substantial evidence does not support the ALJ's conclusion. The Court disagrees.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1)). The regulations provide that the evaluation must consider

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

"An ALJ may not consider the type of activities a claimant can perform without considering the extent to which she can perform them." Woods, 888 F.3d at 694 (citing Brown, 873 F.3d at 263). In the Fourth Circuit, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in the decision. Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). When the

14

Commissioner, through the ALJ and Appeals Council, "state[s] that the whole record was considered, and, absent evidence to the contrary, we take her at her word." Reid, 769 F.3d at 865 (citing Hacket v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005)). An ALJ's credibility determination is entitled to deference and finding that a claimant's statements were inconsistent with the objective evidence provides adequate reasoning to conclude the decision is supported by substantial evidence. McCoy v. Saul, No. 3:19-CV-00484, 2021 WL 1187093, at *3 (W.D.N.C. Mar. 29, 2021).

Claimant argues the ALJ's evaluation ignores reports from Claimant and her husband regarding the extent of Claimant's medication side effects, her efforts to lose weight, and her work history. The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 31). However, the ALJ found Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely consistent with the medical evidence and objective evidence in the record. (Tr. 31). Per the ALJ's opinion, Claimant performed activities indicating a higher level of functioning than her reported symptoms alleged, including completing personal needs, preparing simple meals, ironing, driving, and shopping in stores. (Tr. 28). The ALJ also noted Claimant exercised five days per week in June 2019, which included walking four miles at a time and yoga. (Tr. 32). Claimant's examinations also demonstrated normal findings. (Tr. 32). She responded well to conservative treatment, and she did not generally exhibit findings expected for a completely disabled person. (Tr. 32).

Additionally, the ALJ found the opinion of Dr. Valerie Andrews, a state agency medical consultant, consistent with Claimant's progress reports, treatment history, and examination findings. (Tr. 32). Dr. Andrews determined Claimant should be limited to light work, with additional pushing/pulling with the left upper extremity, postural, manipulative, and

15

environmental limitations. (Tr. 32). The ALJ found Dr. Andrew's opinion persuasive and reduced Claimant to a sedentary level of exertion based on the evidence. (Tr. 32). Last, the ALJ stated he carefully considered the entire record when making his findings. (Tr. 27).

Thus, the ALJ considered "not only the claimant's statements about his or her pain," but also "all the available evidence," including Claimant's medical history, her examinations, and her daily activities. Craig, 76 F.3d at 595. The ALJ also found Dr. Andrews' objective opinion consistent with the evidence, which further supported giving Claimant's subjective statements less weight. The ALJ ultimately determined Claimant's normal findings, good response to conservative treatment, and performance of activities indicated a higher level of function than she and her husband alleged. Finding Claimant's statements "inconsistent with objective evidence" provides "adequate reasoning" to conclude the ALJ's decision is supported by substantial evidence. McCoy, WL 1187093, at *3. "Absent evidence to the contrary," since the ALJ stated he carefully considered the entire record, the Court will "take [him] at [his] word." Reid, 769 F.3d at 865. Therefore, the Court rejects Claimant's arguments that the ALJ failed to properly evaluate her subjective testimony.

### iv. The ALJ's Compliance with the Appeals Council's Remand Order

Fourth, Claimant alleges the ALJ did not comply with the requirements of the Appeals Council's remand order. Claimant argues the ALJ failed to further evaluate and develop the record of her mental impairments by declining to seek additional neuropsychiatric evaluation recommended by Dr. Schneidmiller. Claimant also asserts that the ALJ failed to properly evaluate Claimant's RFC on remand.[4] The Court finds the ALJ complied with the remand order by further

---

[4] The Appeals Council also directed the ALJ to further assess Claimant's alleged symptoms, to further evaluate Claimant's alleged mental impairments in accordance with the special technique described in 20 C.F.R. § 404.1520a, and to obtain evidence from a vocational expert. The Court finds that on remand, the ALJ complied with these directions from the Appeals Council.

developing the record, but as discussed below, the Court agrees the ALJ improperly evaluated Claimant's RFC because he failed to consider the combined effect of her impairments.

The Fourth Circuit has held that an ALJ has a duty to further develop the record only "when the evidence is inadequate" to make a finding as to disability. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). Where "[t]he ALJ had before him sufficient facts to determine the central issue of disability," the ALJ is not required to further develop the record. Scarberry v. Chater, 52 F.3d 322, 1995 WL 238558, at *4 n. 13 (4th Cir. 1995). In Scarberry, the claimant "did not identify what the missing evidence would have shown; rather, she merely speculates that having that evidence 'might' have produced a different result." Id. In the absence of meaningful factual development by the ALJ, district courts commit reversible error by "mining facts from the . . . record." Brown v. Colvin, 639 Fed. Appx. 921, 922 (4th Cir. 2016). Instead, courts are to "remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that . . . meaningful judicial review [may occur]." Id. at 923 (quoting Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013)).

On remand from the Appeals Council, Dr. Schneidmiller's 2021 examination further developed the record concerning Claimant's mental health impairments. (Tr. 33). The ALJ found some of Dr. Schneidmiller's findings persuasive, and other findings unpersuasive. (Tr. 33). As in Scarberry, Claimant does not identify what the additional neuropsychiatric evaluation by Dr. Schneidmiller would have shown; rather, she merely speculates the evidence might produce a different result. Thus, the ALJ had substantial evidence to decline obtaining additional opinion evidence from Dr. Schneidmiller. The ALJ complied with the Appeals Council's remand order by further developing the record, but as discussed below, the ALJ failed to explain the combined effect of Claimant's impairments when evaluating her RFC.

17

### v. Combined Effect of Impairments

Last, Claimant argues the ALJ failed to properly evaluate the combined effect of her impairments when determining her RFC. The Court agrees and finds that remand is warranted.

Under 42 U.S.C. § 423(d)(2)(B), an ALJ must consider the combined effect of all physical and mental impairments when determining a claimant's disability status. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989) (per curiam); Hicks v. Gardner, 393 F.2d 299, 301–02 (4th Cir. 1968). In doing so, the ALJ must consider "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately," would be of a sufficient medical severity to constitute a "listed impairment." 42 U.S.C. § 423(d)(2)(C); accord 20 C.F.R. §§ 404.1523, 404.1526(a). Most important to Claimant's case, 20 C.F.R. § 404.1525(e) and SSR 96–8p require ALJs to consider all impairments in combination when assessing the RFC. This statutory and regulatory requirement compels the ALJ to consider the cumulative, compounding, or synergistic effect of the claimant's individual impairments, instead of "fragmentiz[ing]" them or evaluating them in isolation. Walker, 889 F.2d at 50. "As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effect of the impairments." Id. In doing so, the ALJ must make a "particularized," or "specific and well-articulated," finding regarding the combined effect. Hines, 872 F.2d at 59.

Claimant contends the ALJ failed to evaluate the cumulative effects of her impairments, including MS, carpal tunnel syndrome, and osteoarthritis in her RFC, and further argues the RFC does not account for the accumulative effects of these impairments combined with her obesity. The ALJ says he considered Claimant's impairments and combination of impairments to determine whether the Claimant satisfied a Listing at step three of the sequential disability evaluation inquiry. (Tr. 29). However, he failed to do so when determining her RFC before proceeding on to step four.

While the ALJ specifically considered each of Claimant's underlying physical and mental impairments individually when assessing Claimant's RFC, the ALJ failed to articulate his findings about the combined effect of Claimant's impairments on his RFC determination. For example, the ALJ addressed Claimant's obesity and asthma in his RFC assessment as follows:

> The claimant has also been diagnosed with obesity and asthma (1F/3; 6F/18). A November 2017 pulmonary CT revealed dependent atelectasis, no consolidation, no pleural effusion, no pneumothorax, and patent central airways (12F/10). A November 2013 chest PA revealed no acute infiltration, and unremarkable pulmonary vasculature (7F/53). At times, the claimant presents with expiratory wheezing (e.g., 15F/13). However, on examination, the claimant generally presents with the following mostly normal findings: normal breathing, no crackles, no wheezing, normal respiratory rate and pattern, and lungs clear to auscultation (1F/3; 6F/16;7F/10, 12, 18; 15F/4, 18, 24). The claimant is 5 feet 5 inches tall and has weighed at least 185 pounds, resulting in a BMI of 31 (1F/3). "Obesity" is defined as a BMI of 30 or greater (SSR 19-2p). Obesity can cause limitations in function, including sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balancing, stooping, kneeling, crawling, and crouching (SSR 19-2p). The combined effects of obesity with other impairments may be greater than might be expected without obesity (SSR 19-2p).

> The claimant has received mostly conservative treatment, including prescribed Advair, Ventolin, and fluticasone (6F/20; 7F/6). The claimant's asthma has been noted as mild (16F/5). In limiting the claimant to sedentary work, with additional postural and environmental limitations, the undersigned has adequately accounted for the claimant's obesity and asthma.

(Tr. 32).

Here, the ALJ lists the rules for considering a claimant's obesity pursuant to SSR 19-2, but he fails to provide any explanation regarding how Claimant's obesity affects her other impairments. The ALJ provides no statements or analysis in his opinion about the combined effect of Claimant's impairments on her ability to perform basic work activities, and instead, the ALJ conclusively states the RFC limitations account for her obesity and asthma. While the ALJ's analysis accounts for Claimant's obesity and asthma individually in determining her RFC, it fails to explain how, or to what extent, Claimant's obesity, asthma, and other impairments, combine to

19

affect her RFC. The ALJ determined Claimant did not have an impairment or combination of impairments equaling the severity of one of the listed impairments at step three, but the ALJ did not consider the "cumulative, compounding, or synergistic effect" of all impairments in combination when assessing the RFC, as required pursuant to 20 C.F.R. 404.1520(e), 404.1545, and SSR 96-8p. Walker, 889 F.2d at 50.

Therefore, the Court agrees with Claimant that remand is proper. On remand, the ALJ must provide a "particularized," or "specific and well-articulated," analysis about the combined effect of Claimant's impairments not only when determining whether Claimant satisfies a listed impairment at step three, but also when determining Claimant's RFC. Hines, 872 F.2d at 59.

## IV. CONCLUSION

The Court explicitly notes that in ordering remand pursuant to sentence four of 42 U.S.C. § 405 (g), the Court does not take a position on the merits of Claimant's application for disability benefits. The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand. See, e.g., Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]" (citations omitted)). The Court notes that remand provides the opportunity for the ALJ to modify any prior basis for the prior decision in the new decision issued upon remand. "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." Shalala v. Schaefer, 509 U.S. 292, 299 (1993) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 624–25 (1990)).

**IT IS THEREFORE ORDERED** for the reasons above, Claimant's Motion for Summary Judgment, (Doc. 8), is **GRANTED**; the Commissioner's Motion for Summary Judgment, (Doc.

No. 10), is **DENIED**; and the ALJ's determination is **REMANDED** to the Commissioner for further proceedings consistent with this **ORDER**.

      **IT IS SO ORDERED.**

Signed: May 4, 2023

Frank D. Whitney
United States District Judge